**In re PRUDENTIAL INSURANCE COMPANY OF AMERICA, Plaintiff,**

**v.**

**COLONY SQUARE COMPANY, Defendant.**

**Bankruptcy No. 84–01325A.**
**Adv. No. C83–2503A**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

March 26, 1984.

Frank Bird, Jr., R. Neal Batson, Atlanta, Ga., for Prudential.

Larry Bogart, Jerry Blackstock, Atlanta, Ga., for Colony Square.

E. Penn Nichalson, Atlanta, Ga., for Committee of Unsecured Creditors.

Thomas R. Johnson, Pittsburgh, Pa., for Committee of holders of Partnership Interests.

## MEMORANDUM OPINION

HUGH ROBINSON, Bankruptcy Judge.

This matter is before the court on a pending Motion to Dismiss filed by Prudential Insurance Company of America ("Prudential"). Prudential seeks to dismiss a Chapter 11 petition filed by Colony Square Company ("CSC") in the bankruptcy court of Pennsylvania.

### FINDINGS OF FACT

Prior to 1975, Prudential loaned large sums of money to CSC for the construction of a complex called "Colony Square". The complex consists of a hotel, condominiums, retail stores and office space located in Atlanta, Georgia. Under a Promissory Note and Deed to Secure Debt, the Colony Square complex served as collateral for Prudential's loan. CSC was unable to fulfill its obligations under the note, and on October 16, 1975, it filed a Chapter XII petition under the former Bankruptcy Act of 1898. The petition was filed in the bankruptcy court for the Northern District of Georgia, and on March 30, 1977, this court

confirmed a Consolidated Plan of Arrangement proposed by Prudential.

The order of confirmation, at paragraph (f), provided as follows:

This Court shall retain jurisdiction to enforce this Order and the Plan.... This Court shall, as provided in the Plan, retain exclusive jurisdiction of the debtor's property leased to Prudential for the purpose of enforcing the provisions of the Plan with respect thereto.

The plan itself, at paragraph IV(B)(2), further provided that:

"Following confirmation, the Court will ... (ii) retain exclusive jurisdiction over the Remaining Property to supervise and enforce the compliance by CSC and Prudential with their agreements with each other...."

The plan, as it pertained to Prudential, provided that Prudential, as mortgagee, would go into possession of its collateral under a leasehold arrangement. During the five year lease term, Prudential was precluded from foreclosing upon the property if CSC made annual contributions to offset operating costs. Furthermore, beginning in the year 1978, CSC could regain possession of the Colony Square complex by either bringing the loan fully current and reimbursing Prudential for certain expenses, or by paying the loan in full. If CSC failed to exercise one of these options prior to December 31, 1981, Prudential was entitled to either proceed with foreclosure or to demand a deed in lieu of foreclosure.

It is undisputed that CSC failed to bring the loan current or to pay it off by December 31, 1981. In addition, CSC failed to make the 1981 annual contribution for operating expenses. Thus, on January 8, 1982, pursuant to its rights under the plan, Prudential gave notice to CSC of its desire to receive a deed in lieu of foreclosure.

The tender of the deed in lieu of foreclosure was scheduled to occur on January 29, 1982. On January 28, 1982, however, CSC filed a Chapter 11 petition under the Bankruptcy Code of 1978 in the Bankruptcy Court for the Western District of Pennsylvania. Since the automatic stay of 11

U.S.C. § 362 is invoked upon the filing of a petition, Prudential was precluded from further attempts to effectuate the Chapter XII plan, and the proposed transfer of the deed in lieu of foreclosure was not consummated. In its petition CSC listed the Prudential debt.

Prudential filed a motion in the Bankruptcy Court of Pennsylvania, requesting the court to dismiss CSC's Chapter 11 petition. In the alternative, Prudential requested limited abstention or a change of venue. Prudential argued, inter alia, that this court's retention of jurisdiction to enforce the Chapter XII plan precluded CSC from filing a second bankruptcy petition. The bankruptcy court held, however, that jurisdiction over the Chapter 11 case was proper because, pursuant to Section 14(c)(5) of the Bankruptcy Act,[1] six years had elapsed since CSC's original filing under Chapter XII. According to the Chapter 11 Bankruptcy Court in Pennsylvania, the Chapter XII court's attempt to "wet nurse" the parties could not foreclose the debtor's right to refile after the passage of six years. *In re Colony Square Co.*, 22 B.R. 92 (Bankr.W.D.Pa., 1982).

Prudential appealed this decision to the District Court for the Western District of Pennsylvania. That court rejected the bankruptcy court's "wet nursing" argument and suggested that the Chapter XII case was still properly pending in the Chapter XII court. Citing *Freshman v. Atkins* 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193 (1925), the district court stated that the pendency of one bankruptcy case precludes consideration of a second petition which purports to deal with the same debts. Rather than dismiss the action, however, the district court held that the proper course of action was to transfer that part of the case which dealt with the debt to Prudential to the Bankruptcy Court where the Chapter XII case was still pending.

*Prudential Ins. Co. of America v. Colony Square Co.*, 29 B.R. 432 (W.D.Penn. 1983). The case was ultimately transferred to the District Court for the Northern District of Georgia, which, pursuant to Emergency Rule (c), referred the case to this court. Prudential's Motion to Dismiss, therefore, is currently pending before the court.

On March 15, 1984, the court held a hearing to determine whether jurisdiction over the debtor's Chapter 11 petition was properly vested in this or any other court.[2] Although this court is not bound by either of the aforesaid opinions, an independent review of the facts and the law has persuaded the court that the debtor's Chapter 11 petition is improper and should be dismissed.

## CONCLUSIONS OF LAW

The clear weight of authority in this country holds that if a bankruptcy action is pending, a subsequent action which purports to affect the same debt cannot be maintained. *Freshman v. Atkins*, 269 U.S. 121, 46 S.Ct. 41, 70. L.Ed. 193 (1925), *In re Stahl, Asano, Shigetomi Assoc.* 6 B.R. 232 (Bankr.D.Haw.1980), *In re Stahl, Asano, Shigetomi & Assoc.* 7 B.R. 181 (Bankr.D. Haw.1980). *See also Central Trust Co. v. Official Creditor's Committee* 454 U.S. 354, 102 S.Ct. 695, 70 L.Ed.2d 542 (1982), *Matter of Macon Uplands Venture*, 624 F.2d 26 (5th Cir.1980), *Matter of Macon Uplands Venture*, 7 B.R. 293 (D.C.M.D. Ga., 1980), *In re Eagson Corp.*, 1 B.R. 77 (Bankr.E.D.Penn., 1980).

The above-cited proposition stems from well-established notions of orderly administration of justice, the court's inherent right to protect its own jurisdiction, and the court's duty to preclude, where possible, an abuse of the bankruptcy laws.

---

1. 11 U.S.C. § 32(c)(5) (1976).

2. The court heard a full day of argument from CSC and Prudential on this issue. In addition, the Committee of Holders of Partnership Interests, a committee created by the Pennsylvania Bankruptcy Court, submitted briefs and presented oral argument as to why the Chapter 11 case should not be dismissed. Reference to an argument of CSC may also include an argument advanced by the Committee.

In *Freshman v. Atkins, supra,* the Supreme Court held that where an application for discharge is pending in the bankruptcy court, the court on its own motion can refuse a second application for discharge, since "the law will not tolerate two suits at the same time for the same cause." 269 U.S. at 123, 46 S.Ct. at 42. The Supreme Court stated: "Not only should the court of bankruptcy protect the creditors from an attempt to retry an issue already tried and determined between the same parties, but the court, for its own protection, should arrest, *in limine,* so flagrant an attempt to circumvent its decrees." *Id.* at 124, 46 S.Ct. at 42 (quoting *In re Fiegenbaum,* 121 F. 69, 70 (2nd Cir.1903)).

An analogous situation exists in the present case. Circa 1977, CSC and Prudential agreed upon the proper treatment and repayment of the Prudential debt. That settlement was embodied in the Chapter XII plan and approved by order of this court. We retained jurisdiction to enforce the confirmed plan.

■ By filing a subsequent bankruptcy petition, CSC now seeks to thwart the operation of the unconsummated plan, and to relitigate the issue of how the Prudential debt should be treated in bankruptcy. That issue has already been resolved, and CSC is bound by the terms of its agreement. *See Freshman v. Atkins supra; Matter of Springpark Assoc.* 623 F.2d 1377 (9th Cir.1980). The court should not sanction an attempt to circumvent the terms of a binding, confirmed plan. To do so would make a mockery of this court's jurisdiction.

The debtor's Chapter XII action is still pending in this court. The plan has not been consummated, and the court has retained jurisdiction to enforce it. No final decree has been entered, and the Chapter XII files have not been closed. We can see no reason to allow a simultaneous Chapter 11 case to proceed. In fact, the mere possibility that a court will be forced to entertain simultaneous bankruptcy cases has

been held sufficient to warrant the dismissal of a second petition. In *In re Stahl, Asano, Shigetomi & Assoc., supra,* a bankruptcy court held that it could sua sponte dismiss a Chapter 11 petition where an appeal of a Chapter XII dismissal was pending. The court reasoned that if the district court reversed its dismissal of the Chapter XII case, it would be forced to entertain two bankruptcy cases which dealt with the same debts.

Under our facts, allowing the Chapter 11 case to proceed would place this court in an awkward predicament. We would be requested as a Chapter XII court to enforce the unconsummated plan, but we would be admonished as a Chapter 11 court that such relief would result in a violation of the automatic stay. Each voice would speak with equal force and validity, since both cases would properly be before the court. We deem it to be within our inherent powers to preclude such an absurd result. *Freshman v. Atkins, In re Stahl, Asano, Shigetomi & Assoc., supra.*

■ CSC argues that this court can not properly retain jurisdiction to enforce the plan and that the Chapter XII case is therefore not "pending" within the meaning of *Freshman v. Atkins* and the other cases cited above. However, CSC agreed, in the plan itself, to the court's retention of jurisdiction. The court's reservation of jurisdiction was as much for CSC's protection as for the protection of Prudential. Thus, we agree with the Pennsylvania District Court that such retention is not improper. *See Prudential Ins. Co. of America v. Colony Square Co., supra.*

CSC advances several other contentions which we reject as without merit. The most cogent of these arguments, however, warrants a brief discussion. CSC argues that in determining whether the CSC Chapter 11 petition has been properly filed, this court must look solely to the objective criteria of Section 14(c)(5) of the Bankruptcy Act, 11 U.S.C. § 32(c)(5) (1976).[3] This section states that:

---

**3.** The Bankruptcy Code contains language that

is virtually identical to that of Section 14(c)(5)

(c) The Court shall grant the. discharge unless satisfied that the bankrupt has ... (5) in a proceeding under this title commenced within six years prior to the date of the filing of the petition in bankruptcy has been granted a discharge, or had a composition or an arrangement by way of composition or a wage earners plan by way of composition confirmed under this title; ....

CSC therefore contends that it may file a new petition every six years, without fear of constraint by this or any other court.

We hesitate to give the statute such a sanitized interpretation. Surely Congress did not contemplate a debtor's unfettered right to refile every six years, even if a bankruptcy case involving the same debt is still pending. As stated by the court in *Stahl, supra,*

> "While the plain language of a statute is the best indication of legislative purpose, it is well settled that a court must look beyond the plain meaning of the statute if the plain meaning would lead to absurd or futile results.

7 B.R. at 186.[4]

▆▆▆ Thus, we hold that Section 14(c)(5) of the Bankruptcy Act does not preclude dismissal of this case. We further hold that the debtor's receipt of a discharge upon confirmation of the Chapter XII plan does not strip the case of its "pending" nature. This court explicitly retained jurisdiction to ensure consummation of the plan. The plan is as yet unconsummated and the files have not yet been closed. The Chapter XII case is "pending" in this court. Thus, a subsequent Chapter 11 case, purporting to deal with the same debt, is improper and can not be maintained.

The Chapter 11 case is hereby dismissed for lack of subject matter jurisdiction. All adversary proceedings filed within the Chapter 11 are also dismissed by consent of the parties, and without prejudice.

Consistent with this order, the following adversary proceedings are dismissed.

1. Adversary Proceeding No. 83–1476, A Complaint in equity originally filed in the Court of Common Pleas of Allegheny County, Pennsylvania, as amended February 6, 1984;

2. Adversary Proceeding No. 83–914, denominated 'Complaint for Declaratory Judgment, For Approval of Rejection of Unexpired Lease, For an Accounting, and For Other Relief' filed in the United States Bankruptcy Court for the Northern District of Pennsylvania on or about May 10, 1983, as amended February 6, 1984;

3. Adversary Proceeding No. C84–402A denominated 'Complaint for Damages and Writ of Possession' filed in the Superior Court of Fulton County, State of Georgia on February 6, 1984, and removed to the United States District Court for the Northern District of Georgia on March 2, 1984; and

4. The Counterclaim and Jury Trial Demands filed by Colony Square Company and The Committee of Holders of Partnership Interests filed in response to the Prudential Insurance Company of America's 'Motion For Relief From Stay, To Carry Out Arrangement' filed on or about February 9, 1984 in the Chapter 11 Case.

---

of the Act. See 11 U.S.C. § 727(a)(8). Thus, our holding as to Section 14(c)(5) is equally applicable to arguments advanced under 11 U.S.C. § 727(a)(8). *See Prudential Ins. Co. of America v. Colony Square Co.* at 435, n. 3.

**4.** The issue before the *Stahl* court was the proper interpretation of 11 U.S.C. § 1112(b), which states that a court may dismiss or convert a case upon "request of a party in interest." The *Stahl* court held that such language should not be interpreted to preclude the court from exercising its inherent right to dismiss a case *sua sponte,* since such an interpretation would leave the court powerless to protect its own jurisdiction. Similarly, the language of Bankruptcy Act Section 14(c)(5) should not be interpreted to preclude the court from dismissing a second bankruptcy petition if a prior case dealing with the same debt is still pending. Construction of the section in a vacuum, without consideration of a prior pending case, would force the court to simultaneously administer multiple cases involving the same debt. Such is the 'absurd result' envisioned by the court in *Stahl. See Prudential Ins. Co. of America v. Colony Square Co., supra.* at 438, n. 12.